UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JAMES O. PAIGE, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:09-cv-143 |
| | ) | |
| CITY OF FORT WAYNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

### I. INTRODUCTION

Before the Court in this action filed by *pro se* Plaintiff James Paige is a series of motions: (1) a motion for summary judgment filed by Paige (Docket # 38); (2) a motion for summary judgment filed by Defendants City of Fort Wayne; Fort Wayne Police Officers Ben Springer, Richard Page, Rachelle Foster, Gary Hensler, and Benjamin Truesdale; and Fort Wayne Police Department Detectives Denise Phillips and Judith Schon (collectively, "Defendants") (Docket # 43); and (3) four motions to strike, two filed by Paige (Docket # 67, 71) and two filed by Defendants (Docket # 51, 65). Liberally construing these filings and his complaint, Paige advances a plethora of federal and state law claims against Defendants. His principal complaint, however, falls under 42 U.S.C. § 1983 and arises from the alleged illegal search of his vehicle by some of the Defendants and his subsequent arrest on August 21, 2007, for carrying a handgun without a license.

Because ultimately the vehicle search was proper, and because the handgun found in the search provided probable cause for Paige's arrest, most of what Paige advances as legal claims fail as a matter of law. As discussed fully later, Paige's remaining claims fare no better.

Consequently, Paige's motion for summary judgment (Docket # 38) will be DENIED, and the Defendants' motion for summary judgment (Docket # 43) will be GRANTED.[1]

## II. FACTUAL BACKGROUND

On August 21, 2007, Fort Wayne Police Officers Truesdale and Hensler were on duty in the same marked squad car when they responded to 1630 East Lewis Street concerning a disturbance involving an armed party. (Truesdale Aff. ¶¶ 3, 4.) In particular, the dispatch reported that Drema Johnson had complained about an incident that occurred at Lewis and Lillie Street. (Truesdale Aff. ¶ 5.) The dispatcher further reported that the perpetrator was a black male who lived on Lillie Street and that he was wearing a shirt and jeans, driving a white Jeep, and reportedly had a .380 pistol in his truck. (Truesdale Aff. ¶ 5.) The report indicated that the perpetrator had reportedly threatened to kill Johnson. (Truesdale Aff. ¶ 5.)

As Officers Hensler and Truesdale were en route to 1630 East Lewis Street (Truesdale Aff. ¶ 6), Fort Wayne Police Officer Ben Springer was already at 1630 East Lewis Street speaking to the Johnson and another witness, Charita Smith. (Springer Aff. ¶ 7). Johnson told Springer that a black male, whom she did not know but who lived on Lillie Street, had threatened to shoot her with a gun. (Springer Aff. ¶ 7.) Johnson told Springer that the man was driving a white Jeep Cherokee.[2] (Springer Aff. ¶ 7.) As Johnson and Smith were making this report, Officer Springer saw a white Jeep Cherokee backing up south bound on Lillie Street and

---

[1] Because Paige's claims will not survive summary judgment even when considering the evidence that Defendants seek to strike, Defendants' two motions to strike will be DENIED AS MOOT. As to Paige's two motions to strike, they will be DENIED for the reasons set forth in footnote 10 *supra*.

[2] Paige denies Officer Johnson's version of the events but as pointed out later, the dispute is immaterial since what is important is what the police were told by Johnson, not whether it was accurate. Paige does not challenge what the police were in fact told by Johnson and her passenger, Smith.

2

Johnson confirmed that it was the suspect's vehicle. (Springer Aff. ¶ 8.) Springer aired the location and the description of the vehicle that the suspect was driving on the police radio. (Springer Aff. ¶ 9.) At about the same time, Officers Hensler and Truesdale arrived at the scene. (Hensler Aff. ¶¶ 6, 7.) Hensler and Truesdale stopped the white Jeep in the 1300 block of Lillie Street. (Hensler Aff. ¶¶ 8-10.).

As this was occurring, Johnson and Smith told Officer Springer that as Johnson was driving north in the 1300 block of Lillie they pulled up behind a white Jeep Cherokee that was stopped in the roadway blocking traffic. (Springer Aff. ¶¶ 11, 12.) Johnson reported that after waiting a few minutes, she honked her horn twice. (Springer Aff. ¶¶ 11, 12.) She elaborated that the driver of the white Jeep, later identified as Paige, then began yelling, "I've got a 380 bitch" and threatened to shoot her. (Springer Aff. ¶¶ 11, 12.) Smith stated that Paige then moved the Jeep forward and pulled over, but continued to yell and curse at them as she and Johnson passed. (Springer Aff. ¶¶ 11, 12.) When she got home, Johnson called the police. (Springer Aff. ¶ 12.)

Meanwhile, Officers Hensler and Truesdale had the white Jeep Cherokee stopped in the 1300 block of Lillie Street. (Springer Aff. ¶ 13; Hensler Aff. ¶ 8; Truesdale Aff. ¶ 8.) They noted that the driver matched the description the dispatcher had provided. (Hensler Aff. ¶ 7; Truesdale Aff. ¶ 7.) The driver of the Jeep, later identified as Paige, exited the Jeep as Hensler and Truesdale approached it with guns drawn.[3] (Hensler Aff. ¶ 9; Truesdale Aff. ¶ 9.) It is undisputed, however, that while outside the car Paige was ordered to stop and put his hands

---

[3] Paige maintains that the officers ordered him out of the car, and Springer's Narrative Report does indicate that Hensler had Paige step out of his car. (Defs.' Mot. for Summ. J. Ex. D1.) On the other hand, Truesdale's Narrative Report simply indicates that Paige "got out of the car and we ordered him to stop and put his hands behind his back which he did." (Defs.' Mot. for Summ. J. Exs. B1, C2.) The squad car video of the incident is inconclusive concerning whether Paige was in fact ordered out of his car. (Defs.' Mot. for Summ. J. Ex. C1.)

behind his back. (Hensler Aff. ¶ 10; Truesdale Aff. ¶ 10.) Hensler then handcuffed him and patted him down for weapons and officer safety. (Hensler Aff. ¶ 11; Truesdale Aff. ¶ 11.) According to the Defendants, in response to Hensler's question Paige admitted that there might be a gun in the vehicle. (Springer Aff. ¶ 13; Truesdale Aff. ¶ 9; Hensler Aff. ¶ 9.) Paige denies ever stating that he had a gun because, as far as he knew, he did not have one. (Pl.'s Mot. for Summ. J. 1.) Hensler then placed Paige in the back of their squad car, again for officer safety. (Truesdale Aff. ¶ 12; Hensler Aff. ¶ 12; Springer Aff. ¶ 13.)

In any event, the in-car video reveals that as Paige was being led to the squad car by Hensler, Truesdale walked to the car and conducted an "inspection of the interior of the Jeep for officer safety," finding under the front driver seat a Smith and Wesson handgun with a magazine inserted. (Truesdale Aff. ¶ 13; Hensler Aff. ¶ 13; Springer Aff. ¶ 14.) Truesdale unloaded the magazine and secured the gun in the squad car. (Truesdale Aff. ¶ 14.)

As this was occurring, Fort Wayne Police Officers Raquel Foster and Richard Page arrived to assist. (Foster Aff. ¶¶ 6, 7; Page Aff. ¶¶ 6, 7.) Foster helped perform a quick search of the Jeep for officer safety, looking for weapons that would ostensibly be within Paige's reach.[4] (Foster Aff. ¶ 8). She had no other involvement in the incident. (Foster Aff. ¶ 9.) Officer Page seems to have been merely at the scene.[5] (Page Aff. ¶¶ 7-9).

As revealed on the video of Paige's arrest, Paige was then informed by Officer Hensler

---

[4] Paige maintains that the officers unlocked his car to perform the search, but as the video reveals, the driver door was not locked. (Defs.' Mot. for Summ. J. Ex. C1.)

[5] Fort Wayne Police Officer Denise Phillips apparently responded to the call and patrolled the area, but never arrived at the scene. (Phillips Aff. ¶¶ 3, 4.) In short, she had no involvement in any of these events. (Phillips Aff. ¶¶ 3-7.) Detective Judith Schon was not at the scene and never had any contact with Paige. (Schon Aff. ¶¶ 3, 7, 9.) She did, however, in her capacity as a Detective with the Fort Wayne Police Department, conduct post-arrest interviews of Johnson and Smith and forwarded her paperwork to the prosecutor's office. (Schon Aff. ¶¶ 4-6, 8, 10.)

that he was not under arrest but that he was part of the investigation, and Hensler proceeded to read Paige his Miranda rights. (Defs.' Mot. for Summ. J. Ex. C1; Hensler Aff. ¶ 16; Springer Aff. ¶ 15.). The dispatcher informed the officers that Paige did not have a local handgun permit. (Truesdale Aff. ¶ 15; Hensler Aff. ¶ 15; Springer Aff. ¶ 16.)

At around this time, Paige's son arrived and claimed ownership of the pistol, explaining that he left it in the car, and he produced a gun permit. (Defs.' Mot. for Summ. J. Ex. D1.) Notwithstanding his son's intervention, Paige was arrested for carrying a handgun without a license, transported to the Allen County Lock-up by Officer Springer, and ultimately charged with Unlawful Possession of a Firearm by a Serious Violent Felon. (Truesdale Aff. ¶ 17; Hensler Aff. ¶ 20; Springer Aff. ¶¶ 17-19.)

The next day, Officer Springer filed an Affidavit for Probable Cause against Paige for Carrying a Handgun without a License and Unlawful Possession of a Firearm by a Serious Violent Felon in the Allen Superior Court. (Defs.' Mot. for Summ. J. Ex. I.) On that same day, Paige appeared before Judge Gull of the Allen Superior Court for an initial hearing, where she found probable cause for Paige's arrest for Carrying a Handgun without a License[6], a Class C Felony; and under Indiana Code § 35-47-4-5, Unlawful Possession of a Firearm by a Serious Violent Felon, a Class B Felony. (Defs.' Mot. for Summ. J. Exs. I-J.)

Paige was ultimately represented by counsel in the criminal prosecution. (Defs.' Mot. for Summ. J. Exs. J, K.) Eventually, the charge of Carrying a Handgun was dropped. (Defs.' Mot. for Summ. J. Ex. K.)

---

[6] In its records, the state court appears to cite to a prior statute, since repealed; the proper reference is to Indiana Code § 35-47-2-1.

As Paige's case proceeded, his attorney filed a motion to suppress any evidence concerning the gun based on the warrantless, and purportedly unreasonable, search of the car in violation of Article 1, Section 11 of the Indiana Constitution. (Defs.' Mot. for Summ. J. Ex. L.) After a hearing, the Court summarily denied Paige's motion. (Defs.' Mot. for Summ. J. Ex. J.)

Apparently Paige's counsel informally requested a copy of the in-car video (Defs.' Mot. for Summ. J. Ex. C1), but was informed by the Allen County Prosecuting Attorney's Office that one did not exist. (Whitehurst Aff. ¶¶ 9, 10.) It does not appear, and Paige does not allege, that any of the Defendants were aware of the request or the Prosecuting Attorney's response. (Whitehurst Aff. ¶¶ 9, 10.)

At the May 20, 2008, jury trial, the parties stipulated that Paige had a prior felony conviction under Indiana Code 35-47-4-5(b)(23), thus qualifying him as a "serious violent felon."[7] (Defs.' Mot. for Summ. J. Ex. H at 4.) Ultimately, however, the jury returned a "not guilty" verdict, and Paige was acquitted. (Defs.' Mot. for Summ J. Ex. J.)

### III. STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst*

---

[7] Although Paige seems to take issue with the validity of his prior December 15, 1997, conviction for dealing cocaine, his stipulation at trial and subsequent acquittal renders his objection moot.

*Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

When cross-motions for summary judgment are filed, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *M.O. v. Ind. Dept. of Educ.*, No. 2:07-CV-175-TS, 2009 WL 857548, at *3 (N.D. Ind. Mar. 31, 2009) (alteration in original) (citing *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). "The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *Id.* (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). "It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment—more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment. The motions are treated separately." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008) (citations omitted); *M.O.*, 2009 WL 857548, at *3.

7

# IV. DISCUSSION

A generous reading of Paige's submissions suggests a host of federal and state claims, some of which he did not include in his complaint. Paige, however, principally concentrates on the alleged unlawful search of his vehicle and his purported false arrest, claims both presumably grounded in the Fourth and Fourteenth Amendments.[8]

In that vein, Paige essentially denies ever stating to the police or Johnson that he had a pistol, let alone threatening to shoot anyone with one. In sum, he claims that the police failed to

---

[8] Paige lists a number of claims in his *pro se* complaint, motion for summary judgment, and response to the Defendants' motion for summary judgment, but fails to support them with evidence or legal argument. In that regard, his allegations under the Sixth and Eighth Amendments fail because he does not suggest how these two Amendments could possibly apply here. *See Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) ("[An] undeveloped argument constitutes waiver."). Likewise, to the extent he complains that certain exculpatory evidence was withheld at his criminal trial by the Prosecuting Attorney and the Court, that claim fails because he does not allege, let alone show, that these Defendants were personally involved. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (quoting *Kelly v. Mun. Courts of Marion County*, 97 F.3d 902, 909 (7th Cir. 1996) ("Individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue.")).

In addition, all the state law claims fail because although Paige filed a Notice of Tort Claim on November 14, 2008, it was woefully late under the Indiana Tort Claims Act, and thus these claims are barred by operation of Indiana Code §§ 34-13-3-8 and 13-3-10. *See Brown v. Alexander*, 876 N.E.2d 376, 380 (Ind. Ct. App. 2007) (stating that claims against government entities are barred by a failure to comply with the notice requirements under the Indiana Tort Claims Act). Summary judgment must also be granted to Defendants Page, Phillips, and Schon because there are no facts suggesting their personal involvement in any alleged constitutional deprivation. *See Palmer*, 327 F.3d at 594. There is also no indication that either Phillips or Schon, who are detectives and thus arguably supervisors, are in any way liable for somehow condoning the alleged violations. *See Jones v. City of Chicago*, 856 F.2d 985, 994-95 (7th Cir. 1988) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

Finally, Paige asserts that the Defendants violated his federal rights through malicious prosecution. However, in *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001), the Court of Appeals held that in light of the Supreme Court's "effective holding" in *Albright v. Oliver*, 510 U.S. 266 (1994), malicious prosecution is not a constitutional tort if state law provides a remedy for malicious prosecution. Indiana law does in fact recognize such a claim. *See, e.g.*, *Butt v. McEvoy*, 669 N.E.2d 1015, 1017 (Ind. Ct. App. 1996) (stating that a claim for malicious prosecution requires proof that defendant instituted proceedings against plaintiff and acted with malice in doing so, and that prosecution was initiated without probable cause and then terminated in plaintiff's favor). With the Court's rulings discussed more fully *infra*, however, it is clear that Paige has no viable claim under § 1983, and thus no malicious prosecution claim. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981); *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) (explaining that without a predicate constitutional violation one cannot make out a prima facie case under § 1983); *see, e.g.*, *Bishop v. City of Indianapolis*, No. 1:06-cv-1064-SEB-TAB, 2008 WL 820188, at *14 (S.D. Ind. Mar. 24, 2008) (concluding that a malicious prosecution claim under the Fourth Amendment was "superfluous" where plaintiff also brought a § 1983 unlawful arrest claim).

question several key witnesses at the scene and that if they had done so, they would have learned that Johnson's statements were false. He also argues that the search of his vehicle violated the Fourth Amendment and that Officer Truesdale's statement that the gun was in plain view is false.

In turn, the Defendants argue that a proper investigatory stop of Paige's vehicle occurred and that the police officers took reasonable steps to insure their own safety: first, by doing a pat down of Paige; and second, by conducting a cursory inspection of his vehicle, which uncovered the pistol. In connection with the false arrest claim, the Defendants argue that after finding the handgun in Paige's vehicle following a valid search, they had probable cause to arrest him for carrying a handgun without a license. Thus, as the Defendants see it, Paige's claims are all doomed to failure. The Defendants further maintain that even if there is some question concerning the probable cause to arrest or to conduct a vehicle search, they are still entitled to summary judgment because under the qualified immunity doctrine they reasonably believed their conduct to be lawful.

Having summarized the parties' respective positions, the Court will now turn to the merits of Paige's Fourth Amendment claims.[9]

---

[9] Defendants argue that Paige's Fourth Amendment claims cannot be relitigated because they are barred under the doctrine of collateral estoppel, given Judge Gull's probable cause finding and the state court's denial of his motion to suppress. The principle underpinning of the doctrine appears in the full faith and credit provision of 28 U.S.C. § 1738, meaning that the Court must look to Indiana's law of collateral estoppel to resolve the issue. *See Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2008) (citing *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004)). Although *Best* stands for the proposition that Indiana's version of collateral estoppel "bars subsequent litigation of an issue necessarily adjudicated in a former suit if the same issue is presented in the subsequent suit," *id.* (citation and internal quotation marks omitted), it also notes that there must be a "final judgment on the merits" in the first suit. *Jennings v. State,* 714 N.E.2d 730, 732 (Ind. Ct. App. 1999); *Sweeney v. State*, 704 N.E.2d 86, 94 (Ind. 1998). Stated another way, the defensive use of collateral estoppel focuses upon whether Paige had a full and fair opportunity to litigate the issue in the first case and whether it would be unfair under the circumstances to permit its use in the second one. *Jennings*, 714 N.E.2d at 732 (citing *Wilcox v. State*, 664 N.E.2d 379, 381 (Ind. App. 1996)).

A ruling on a motion to suppress, however, is generally not a final judgment. *See Best*, 554 F.3d at 701 (citing *Joyner v State*, 678 N.E.2d 386, 393 (Ind. 1997)); *Schweitzer v. State*, 531 N.E.2d 1386, 1388 (Ind. 1989);

### A. Paige's Fourth Amendment Claims

1. The Investigatory Search of Paige and His Jeep Vehicle Was Permissible.

A fundamental question in this case, and the one upon which Paige's claims largely rise or fall, is whether Officer Truesdale had a legitimate basis for investigating the inside of Paige's Jeep where he found the handgun. The handgun, of course, provides the basis for probable cause to arrest Paige for carrying a handgun without a license.

Turning to the issue, "it is settled for purposes of the [Fourth] Amendment that except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Mancusi v. DeForte*, 392 U.S. 364, 370 (1968) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528-29 (1967)) (internal quotation marks omitted). Exceptions, of course, do exist, and the Defendants rely on one that is well-established—that is, an officer can search the passenger compartment of a person's car without a warrant if the officer has "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts,

---

*Jennings*, 714 N.E. 2d at 734. Indeed, the exception to this general rule is a rather narrow one. For instance, the *granting* of a suppression motion can be deemed a final judgment where it was tantamount to a dismissal of the case and thus a final, appealable judgment. *Jennings*, 714 N.E. 2d at 734. In contrast, Paige's suppression ruling was not final because it was open to reconsideration at trial and upon appeal if he had been convicted. *Best*, 554 F.3d at 701.

Moreover, Paige's acquittal denied him a "full and fair opportunity to litigate the issue." *Allen v. McCurry*, 449 U.S. 90, 95 (1980) (explaining that collateral estoppel does not apply when a party lacked a "full and fair opportunity" to litigate in the previous case). For example, applying that principle under Illinois law, the Seventh Circuit Court of Appeals has prohibited the use of collateral estoppel against a party who had no chance to appeal a prior criminal court finding. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1022 n.10 (7th Cir. 2006) (compiling cases). These same concepts apply to the probable cause finding that followed Paige's non-advesarial probable cause hearing where he did not have counsel present. *Roberts v. Hochstetler,* 592 F. Supp. 703, 710 (N.D. Ind. 1983); *see also Toro v. Gainer*, 370 F. Supp. 2d 736 (N.D. Ill. 2005) (applying Illinois law). Consequently, collateral estoppel does not apply to preclude any of Paige's claims.

reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Doaks v. Horn*, No. 1:07-cv-428-DFM-JMS, 2009 WL 2856968, at *3 (S.D. Ind., Aug. 28, 2009) (citing *Michigan v. Long*, 463 U.S. 1032, 1049-51 (1983)) (internal quotation marks omitted). This type of search relies, at least in part, upon whether the

investigatory stop of Paige's vehicle was justified under *Terry v. Ohio*, 392 U.S. 1, 21 (1968), that is, whether the police had a reasonable suspicion, again supported by "specific and articulable facts," that Paige had committed, was committing, or was about to commit, a crime. *United States v. Raibley*, 243 F.3d 1069, 1074 (7th Cir. 2001).

At the outset, Paige seems to challenge whether the police possessed the requisite reasonable suspicion to stop his vehicle, temporarily seize him, and search both him and his vehicle. More to the point, Paige argues that the victim, Johnson (and presumably her passenger, Smith), made false allegations to Springer about their encounter with Paige and that if the police had conducted a proper investigation, they would have interviewed some eyewitnesses who would have corroborated his version of events.

Paige's argument, which seems to go to the question of probable cause, is misplaced. The police do not need probable cause to initiate an investigatory traffic stop. *Gray v. City of Hammond, Ind.*, 693 F. Supp. 2d 823, 836 n.7 (N.D. Ind. 2010) (citing *Terry*, 392 U.S. 1). The reasonable suspicion standard upon which the Courts assesses the conduct of the Defendants here, requires more than a hunch but less than probable cause and "considerably less than preponderance of the evidence." *Id.* (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). It requires "some minimal level of objective justification for making a stop." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1,

7 (1989)). Determining whether an officer had a reasonable suspicion is assessed considering "the totality of circumstances" and "common-sensical judgments and inference about human behavior." *Id*. (citing *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005)).

Applying *Terry's* reasonable suspicion standard to the situation the police officers encountered, it is clear that the totality of circumstances known to them at the time would warrant a person of reasonable caution to believe that stopping the still-visible white Jeep identified by Johnson, and its unknown driver, was an appropriate and reasonable response to the evolving situation the police had been summoned to investigate. Indeed, Paige presents no evidence to refute the officers' version of the facts and circumstances that led up to the initial traffic stop.[10]

To recap, it is undisputed that the police received a dispatch concerning an emergency telephone complaint by Drema Johnson that a black male, reportedly armed with a .380 pistol and driving a white Jeep on Lillie street, had threatened to kill her. Such dispatches, identifying both a completed crime and a suspect, can be sufficient to justify a *Terry*-type investigative stop to check identification, pose questions, "or to detain the person briefly while attempting to obtain further information." *See, e.g.*, *Boyce v. Woodruff*, 979 F. Supp. 817, 824 (N.D. Ind. 1997) (citing *United*

---

[10] In his response to the Defendants' motion for summary judgment (Docket # 74) and in his motions to strike (Docket # 67, 71), Paige attacks practically every statement in the affidavits submitted by the Defendants, as well as their Narrative Reports and Officer Springer's Affidavit for Probable Cause. For the most part, Paige maintains that the statements of Johnson and Smith, as well as the statements between the police officers, are all hearsay.

The first part of Paige's argument fails because the statements are not being offered for their truth under Federal Rule of Evidence 801(c), but merely to establish what information had been communicated to the police and upon which they acted. *See, e.g.*, *United States v Breland*, 356 F.3d 787, 791-92 (7th Cir. 2004). Likewise, Paige's second objection lacks merit because when law enforcement officers are in communication regarding a suspect, the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine. *United States v. Hensley*, 469 U.S. 221, 231-33 (1985); *United States v. Lenoir*, 318 F.3d 725, 728 (7th Cir. 2003).

Consequently, to the extent Paige asks the Court to disregard these statements, his motions are DENIED. Nevertheless, in order to view the record in a light most favorable to Paige, the Court has disregarded the Defendants' evidence contending that (1) the gun was "in plain sight" in his vehicle, and that (2) he told the officers that there might be a gun in the vehicle. Although this evidence bolsters the Defendants' motion for summary judgment, excluding it has no effect on the eventual outcome.

*States v. Celio*, 945 F.2d 180, 183 (7th Cir. 1991) (quoting *Hensley*, 469 U.S. at 232)); *United States v. Longmire*, 761 F.2d 411, 419 (7th Cir. 1985). This is particularly true where the caller or tipster reports very recent criminal activity. *United States v. Whitaker*, 546 F. 3d 902, 909 n.12 (7th Cir. 2008).

When Officer Springer arrived at the scene, Johnson and Smith (who corroborated Johnson's story), together spotted the white Jeep just down Lillie Street from where the altercation had occurred. The description of the vehicle and its location were immediately aired by Springer. At the same time, Officers Hensler and Truesdale (who were responding to the dispatch concerning a threatened shooting) arrived and stopped the vehicle. Therefore, based on this collective information, *Hensley*, 469 U.S. at 231-33; *Lenoir*, 318 F.3d at 728, Hensler and Truesdale had reasonable suspicion under the circumstances to initiate a traffic stop of Paige's vehicle to investigate whether it and the driver were truly involved in the serious incident Johnson had just reported.

If, however, Paige is arguing that the police exceeded the allowable scope of their investigatory stop when they ordered him out of the vehicle with guns drawn and conducted a pat-down of him and a protective search of his Jeep, that too is foreclosed to him. Once the police officers had reasonable suspicion to suspect that Paige had threatened Johnson with a pistol, they were justified in drawing their weapons for their own protection as they effectuated the stop.[11] *See, e.g.*, *United States v. Watson*, 558 F. 3d 702, 704 (7th Cir. 2009) (citing *Hensley*, 469 U.S. at 235; *United States v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005); *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004)). And Officer Hensler was justified, based on the reports he had received, to

---

[11] Paige is not advancing an excessive force claim under the Fourth Amendment.

13

conduct a limited pat-down of Paige to discover if he had a weapon. *See Whitaker*, 546 F.3d at 908 (citing *Terry*, 392 U.S. at 30).

Finally, an officer with a reasonable suspicion that a motorist may be armed and may be able to gain immediate control of weapons is entitled to conduct a protective search of the passenger compartment of the vehicle without a warrant. *United States v. Arnold,* 388 F.3d 237, 239 (7th Cir. 2004) (citing *Long*, 463 U.S. at 1049; *United States v. Brown*, 133 F.3d 993, 998 (7th Cir.1998)). Such a search must be confined to "those areas in which a weapon may be placed or hidden." *Id.*, (citing *Long*, 463 U.S. at 1049; *United States v. Mancillas*, 183 F.3d 682, 699 (7th Cir. 1999)). Even if the motorist is outside the car and under the temporary control of the police, handcuffed, as Paige was in the backseat of a squad car for instance, a limited (or in Truesdale's words, "cursory") investigatory search is still permissible given that at the time it occurred, Paige could still have eventually regained entry to the vehicle. *Id.* at 241 (citing *Long*, 463 U.S. at 1051-52); *United States v. Wallen,* 388 F.3d 161, 166 (5th Cir. 2004); *United States v. Holifield*, 956 F.2d 665, 669 (7th Cir. 1992).

Therefore, Paige's claim that the search was unlawful under the Fourth Amendment fails as a matter of law.

2. Paige's Arrest for Carrying a Handgun Was Supported by Probable Cause[12]

An arrest is supported by probable cause if, at the time of the arrest, "the facts and

---

[12] Although the Court has found the investigatory stop and search of Paige's vehicle to be valid, Paige would not prevail on his false arrest claim even if Officer Truesdale lacked reasonable suspicion to search the vehicle since the exclusionary rule applicable in criminal cases does not apply in the civil § 1983 context. *See Elliott v. Sheriff of Rush County*, 686 F. Supp. 2d 840, 855 (S.D. Ind. 2010) (citing *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999); *Cannon v. Christopher*, No. 1:06-CV-267, 2007 WL 2609893, at *4-5 (N.D. Ind. Sept. 6, 2007); *Ferrell v. Bieker*, No. 1:03-CV-27-TS, 2006 WL 287173, at *7-8 (N.D. Ind. Feb. 3, 2006)).

circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee was committing or had committed, a crime." *Spiegal v. Cortese*, 196 F.3d 717, 725 n.1 (7th Cir. 1999) (internal quotation marks omitted). Probable cause "demands even less than 'probability.'" *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (quoting *United States v. Moore*, 215 F.3d 681, 685 (7th Cir. 2000)). It "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Id.* (citation omitted). A court must evaluate probable cause "'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)).

Paige was arrested for carrying a handgun in his vehicle without a license in violation of Indiana Code § 35-47-2-1. There is ample evidence to support that arrest. Paige both owned the Jeep and was its only occupant, the handgun was found under his seat, and he did not have a license for the weapon. Moreover, the police were entitled to consider that just a few minutes before he had allegedly threatened Johnson with a pistol, suggesting that he either knew he had one on his person or that one was located in his vehicle.[13]

And to the extent that Paige is arguing that the Defendants should have done more to investigate his claimed innocence, it has repeatedly been held that "an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Woods v.*

---

[13] To support a conviction for carrying an unlicensed handgun in a vehicle, the state must at least prove constructive possession as well as knowledge of the gun's presence. *Woods v. State*, 471 N.E.2d 691, 693 (Ind. 1984).

*City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000); *see, e.g.*, *Tangwall v. Stuckey*, 135 F.3d 510, 520 (7th Cir. 1998); *Gramenos v. Jewel Co., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986). Stated another way, "police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003) (citing *Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 2000)); *Gramenos*, 797 F.2d at 442. And the police are under no duty to further investigate unless the victim's complaint would lead a reasonable officer to be suspicious, *Beauchamp*, 320 F.3d at 743, such as where the police know that the witness harbors a grudge against the accused, *Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006); *see United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991) ("If it seems reasonable to the police to believe that the eyewitness was telling the truth, they need not take any additional steps to corroborate the information regarding the crime before taking action.").

Overall, Paige offers nothing to suggest that the contemporaneous complaints of Johnson and Smith should have been disregarded or even questioned by Springer or the other officers at the scene. And to the extent he is suggesting that the police were negligent in their investigation, or even grossly negligent, he has no claim under § 1983. *See Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006) (citing *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Lewis v. Anderson*, 308 F.3d 768, 773 (7th Cir. 2002) ("Negligence or even gross negligence does not suffice to give rise to liability under § 1983.").

In short, Paige's false arrest claim is subject to summary judgment in favor of the Defendants.

### B. *The Defendants Did Not Violate Paige's Rights Under the Fifth Amendment*

Paige also argues that Officers Hensler, Truesdale, and Springer violated his Fifth

16

Amendment rights when they allegedly interrogated him while he was in custody without first informing him of his right to remain silent and his right to an attorney. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Paige, of course, does not specify what statements he may have made that were actually used against him at trial, and in fact, it appears that his main argument is that none of the officers could testify at trial that they had actually read him his rights. (*See* Paige Aff. ¶ 8.) In short, Paige seems to argue that such an omission gives rise to a *per se* claim under the Fifth Amendment.

There are two problems with Paige's argument. First, the video conclusively establishes, contrary to Paige's recollection, that after the handgun was found, Officer Hensler advised him of his *Miranda* rights while he was in the back seat of the squad car. Therefore, no reasonable jury could conclude otherwise. *See Scott v. Harris*, 550 U.S. 372, 387 (2007). The other problem with Paige's claim is that to assert a viable § 1983 claim, the violation of *Miranda* must lead to the use of a suspect's un-warned statement against him in a "criminal case." *Sornberger*, 434 F.3d at 1024. Paige does not make this argument and does not point to any evidence to support such a claim. Accordingly, this claim fails as a matter of law.

### *C. Paige's Official Capacity Claims Lack Evidentiary Support*

In addition, the claims against the City of Fort Wayne cannot be sustained on this record. Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy. *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). In order to survive summary judgment on a § 1983 official capacity claim, the plaintiff must present evidence demonstrating the existence of an official custom or policy and that the custom or policy was the cause of the alleged constitutional violation. *Id.* Paige

makes no such assertion and offers no evidentiary support, and therefore this claim fails as a matter of law.

To the extent that Paige is asserting, however, that the police officers performed a shoddy investigation that led to his arrest and prosecution, the Supreme Court has stated that under limited circumstances, a municipality's failure to train may amount to an official custom or policy that can serve as the basis for liability under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Establishing municipal liability on the failure to train requires proof of "deliberate indifference" to the rights of persons likely to come in contact with the municipality's employees. *Id*. at 388. The Seventh Circuit has held that such proof can take the form of either "(1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers." *Sornberger*, 434 F.3d at 1029-30. Aside from vague conclusory statements, Paige offers nothing that would satisfy his burden.

Accordingly, the Defendants' motion for summary judgment must be granted on this claim.[14]

## V. CONCLUSION

For the foregoing reasons, Paige's motion for summary judgment (Docket # 38) is DENIED, and Defendants' motion for summary judgment (Docket #43) is GRANTED. In addition, Paige's two motions to strike (Docket # 67, 71) are DENIED,[15] and Defendants' two

---

[14] Because Paige has failed to establish that any Constitutional violations occurred, the Defendants are also entitled to qualified immunity. *See Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009) ("[T]wo questions are pertinent to the defense of qualified immunity: whether the facts alleged show that the state actor violated a constitutional right, and whether that right was clearly established . . . . [A] negative answer to either one is enough to establish the defense of qualified immunity." (citing *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009))).

[15] Although Paige requests a hearing on his motion for summary judgment (*see* Docket # 67, 71), he does not explain why one is needed. Moreover, having thoroughly reviewed the record, the Court does not believe that a

18

motions to strike (Docket # 51, 65) are DENIED AS MOOT. The Clerk is directed to enter

judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED this 2nd day of September, 2010.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

hearing is necessary, and therefore Paige's motion for a hearing is DENIED. *See* N.D. Ind. L.R. 7.5 ("The granting of a motion for oral argument shall be wholly discretionary with the court.").